# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, ELSEVIER, INC., JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC., | Case No. _____ |
| Plaintiffs, | |
| v. | |
| FARUKH KHAN, JOONWON PARK, JEONG HYUN CHU, MASUD KARIM, MD. RABIUL ISLAM and DOES 1-10 d/b/a www.testbanksolution.com, www.testbankpdfdownload.com, www.testbankonline.com, www.testbankcart.com, www.digitaltestbank.com, www.testbank007.com, www.solutionmanualcenter.com, www.testbank-official.com, and www.solutionmanualonline.com, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER,**
**EXPEDITED DISCOVERY ORDER, ORDER AUTHORIZING ALTERNATIVE**
**SERVICE, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

    A.  Plaintiffs' Businesses and Their Copyrighted Works ............................................. 2

    B.  Defendants' Illegal Online Business ...................................................................... 4

ARGUMENT ....................................................................................................................... 9

I.      THIS COURT HAS PERSONAL JURISDICTION ..................................................... 9

II.    DEFENDANTS MEET THE STANDARD FOR A TEMPORARY
       RESTRAINING ORDER AND PRELIMINARY INJUNCTION ............................. 12

    A.  Plaintiffs are Likely to Succeed on All of Their Claims Against Defendants ....... 13

    B.  Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant
       Immediate Relief .............................................................................................. 16

    C.  Plaintiffs Satisfy the Remaining Two Equitable Factors ....................................... 17

III.   PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE
       TRANSFER OF DEFENDANTS' ASSETS ............................................................. 18

    A.  The Court Possesses Ample Authority Under the Federal Rules and Its
       Inherent Equitable Powers to Attach Defendants' Assets .................................... 18

    B.  The Court Also Possesses Authority Under New York Law to Attach the
       Defendants' Assets ............................................................................................ 22

    C.  *Ex Parte* Relief Is Warranted ........................................................................... 24

    D.  The Court Should Require No Bond or, in the Alternative, a Minimal Bond ....... 25

IV.   PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY ............................. 25

    A.  Legal Standard ................................................................................................. 26

    B.  Plaintiffs Satisfy the Factors for Good Cause ..................................................... 27

**TABLE OF CONTENTS**
(Continued)

V.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS ....................................................... 29

    A.  New York CPRL § 308 Authorizes Alternate Service on Individuals in the United States ................................................................................................. 30

    B.  Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country .......................................................................... 30

        1.  Service of Process by Email is Not Prohibited by International Agreement ................................................................................................. 31

        2.  Service of Process by Email is Reasonably Calculated to Provide Notice To Defendants ................................................................................. 32

CONCLUSION ................................................................................................................ 34

# TABLE OF AUTHORITIES

## CASES

*Adelphia Comm'ns Corp. v. Rigas*, No. 02 Civ. 8495 (GBD), 2003 WL 21297258,
2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003)..................................................20

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854,
2013 U.S. Dist. LEXIS 129749 (S.D.N.Y. Sept. 11, 2013)...........................................26

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP),
2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331 (N.D.N.Y. Nov. 8, 2000) ...........20

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th. Cir. 2001)............................13

*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992)...........................................14

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ...........................13, 26, 27, 28

*Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ..............13

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) .................................24, 26

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ....................9

*Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037,
1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14, 1997) .........................................26-27

*Bloomberg, L.P. v. Doe*, No. 13 Civ. 01787 (LGS), 2013 WL 4780036, 2013 U.S.
Dist. LEXIS 130034 (S.D.N.Y. June 26, 2013)......................................................27, 28

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ................20

*Broad. Music, Inc. v. PAMDH Enters., Inc.*, No. 13 Civ. 2255 (KMW), 2014 WL
2781846, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014).............................17

*Broadfoot v. Diaz*, 245 B.R. 713 (Bankr. N.D. Ga. 2000).....................................33, 34

*Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2008 WL 4450259, 2008
U.S. Dist. LEXIS 75329 (S.D.N.Y. Sept. 29, 2008)......................................................10

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30
(2d Cir. 2010)................................................................................................................13

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)...................10

## TABLE OF AUTHORITIES
(Continued)

<u>**CASES**</u>

*Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014)................................................................17

*Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40 (N.Y. App. Div. 1997). ............................................................................................................22

*Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14, 2012) ........................................................19

*De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945)...............................................20

*DeWitt Stern Group, Inc. v. Eisenberg,* No. 13 Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013)...........................................................25

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)......................................................11

*Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012).....................................26

*Doctor's Assocs. v. Distajo*, 107 F.3d 126 (2d Cir. 1997)........................................................25

*Doctor's Assocs. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)............................................................25

*Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14629, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013)........................................................33

*Elsevier, Inc. v. Does 1-10*, No. 16 Civ. 1245 (RA), Ex Parte Order (Feb. 29, 2016) (Dkt. No. 13) and Prelim. Inj. (Mar. 8, 2016) (Dkt. No. 14)........................12, 21

*Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165 (S.D.N.Y. 2006)..............................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ...................................................13

*FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) ...................................................31, 32, 33

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159 (2d Cir. 1971)...............13

*Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428 (S.D.N.Y. 1989).....................................................................................................................24

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999).......19. 20

**TABLE OF AUTHORITIES**
(Continued)

## CASES

*Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)....................................................20

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985)..........................................9

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) .......17

*In re Comverse Tech., Inc.*, No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, 2006 U.S. Dist. LEXIS 62227 (E.D.N.Y. Aug. 31, 2006)................................................................................20

*In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir. 1985)................................................................19

*Ingraham v. Carroll*, 687 N.E.2d 1293 (N.Y. 1997) .....................................................................11

*ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217 (2d Cir. 1983).......................................23

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)................................................................9

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482 (S.D.N.Y. 2004) ...........................................................................................24

*Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 (PGG), 2013 WL 1245456, 2013 U.S. Dist. LEXIS 42758 (S.D.N.Y. Mar. 26, 2013) ..........................................................15

*Libancell S.A.L. v. Republic of Leb.*, No. 06 Civ. 2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442 (S.D.N.Y. May 16, 2006)..........................................................25

*Lions Gate Films, Inc. v. Doe*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032 (C.D. Cal. Aug. 18, 2014)..........................................................19

*Living Scriptures, Inc. v. Doe*, No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968 (D. Utah Nov. 10, 2010) ...........................................................27

*Malibu Media, LLC v. Doe*, No. 12 Civ. 2950 (JPO), 2012 WL 2001968, 2012 U.S. Dist. LEXIS 77469 (S.D.N.Y. June 1, 2012)...............................................................................26

*Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 Civ. 9341 (RWS), 1997 WL 223077, 1997 U.S. Dist. LEXIS 5931 (S.D.N.Y. May 1, 1997) ...................................18

## TABLE OF AUTHORITIES
(Continued)

### <u>CASES</u>

*McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010)..........................................33

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005)..........11

*McGraw-Hill Global Educ. Holdings v. Quttaineh*, No. 15 Civ. 2578 (VEC),
Order (Apr. 3, 2015) (Dkt. No. 3) and Prelim. Inj. and Asset Restraining Order
(Apr. 27, 2015) (Dkt. No. 27) ..........................................................................12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005). .............................13

*Microsoft Corp. v. Jun Yan*, No. 3:10-cv-00162 (VLB), 2010 U.S. Dist. LEXIS 14934
(D. Conn. Feb. 18, 2010) ...............................................................................21

*Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833,
2009 U.S. Dist. LEXIS 40660 (E.D.N.Y. May 14, 2009) ...........................................20

*Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS)(JCF), 2013 WL 1360340, 2013 U.S.
Dist. LEXIS 48954, (S.D.N.Y. Apr. 3, 2013)........................................................16

*Pearson Educ., Inc. v. Ishayev*, 9 F. Supp. 3d 328 (S.D.N.Y. 2014)...........................................16

*Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034 (DAB)(AJP), 2009 WL 3429610,
2009 U.S. Dist. LEXIS 101600 (S.D.N.Y. Oct. 27, 2009) ..........................................16

*Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034 (DAB)(AJP), 2009 WL 4884098,
2009 U.S. Dist. LEXIS 117701 (S.D.N.Y. Dec. 16, 2009) .........................................16

*Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK)(KNF), 2010 WL 3744033,
2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010)..........................................16

*Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK)(KNF), 2011 U.S. Dist. LEXIS
155149 (S.D.N.Y. May 11, 2011)......................................................................16

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011) ..................................10

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412,
2007 U.S. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007).........................................30, 32, 33

*Popular Enters. LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004)..............33

## TABLE OF AUTHORITIES
(Continued)

<u>**CASES**</u>

*Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548
(S.D.N.Y. 2008)..................................................................................................................19

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,*
144 F. Supp. 2d 241 (S.D.N.Y. 2001) ...........................................................18, 20, 22

*Republic of Philippines v. Marcos,* 806 F.2d 344 (2d Cir. 1986) .................................. 18

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .....................31, 32

*Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, 2013 U.S. Dist.
LEXIS 28332 (E.D.N.Y. Feb. 7, 2013) ...........................................................................10

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLS), 2007 WL 1515068
2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007)............................................31

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801 (N.Y. App. Div. 2013)..........................30

*Salinger v. Colting,* 607 F.3d 68 (2d Cir. 2010) ....................................................12, 17

*Sea Carriers Corp. v. Empire Programs, Inc*., No. 04 Civ. 7395 (RWS), 2006 WL
3354139, 2006 U.S. Dist. LEXIS 83843 (S.D.N.Y. Nov. 20, 2006)............................20

*Serio v. Black, Davis & Shue Agency, Inc.,*   No. 05 Civ. 15 (MHD), 2005 WL 3642217,
2005 U.S. Dist. LEXIS 39018 (S.D.N.Y. Dec. 30, 2005). ...................................... 21-22

*Signal Capital Corp. v. Frank,* 895 F. Supp. 62 (S.D.N.Y.1995) ...............................20

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206
(S.D.N.Y. 2009)...............................................................................................................14

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).......................27, 28

*Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007).......................................................26

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.,* Case No. 03 Civ. 8909 (RJH),
2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992 (S.D.N.Y. Dec. 8, 2003) ...................... 24-25

*United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013) ..........31

## TABLE OF AUTHORITIES
(Continued)

**CASES**

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ........................................12

*Warner Bros. Entm't v. Ideal World Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007)....................10

*Williams v.Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005)...........................................33, 34

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) .......................................................18

*WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594 (S.D.N.Y. 2011) .......................................................18

**STATUTES**

17 U.S.C. § 101 ...........................................................................................................15

17 U.S.C. § 102 ...........................................................................................................14

17 U.S.C. § 106 ...........................................................................................................13

17 U.S.C. § 408 ...........................................................................................................14

17 U.S.C. § 410 ...........................................................................................................14

17 U.S.C. § 411 ...........................................................................................................14

17 U.S.C. § 501 ...........................................................................................................13

17 U.S.C. § 502 ...........................................................................................................12

17 U.S.C. § 504 ...........................................................................................................19, 23

**RULES**

Fed. R. Civ. P. 4................................................................................................29, 31, 32, 33, 34

Fed. R. Civ. P. 26................................................................................................26

Fed. R. Civ. P. 64................................................................................................22

Fed. R. Civ. P. 65................................................................................................12, 18, 19, 24, 25

## TABLE OF AUTHORITIES
(Continued)

## **RULES**

N.Y. C.P.L.R. § 302 ..........................................................................................9, 10, 11

N.Y. C.P.L.R. § 308 ...................................................................................................30

N.Y. C.P.L.R. § 6201 ...........................................................................................23, 24

N.Y. C.P.L.R. § 6210 .................................................................................................25

N.Y. C.P.L.R. § 6212 .................................................................................................22


## **OTHER AUTHORITIES**

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16 (2008)...........................15

Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 ................32

McGraw-Hill Global Education Holdings, Elsevier, Inc., John Wiley & Sons, Inc.,

Cengage Learning, Inc., and Pearson Education, Inc. (collectively, "Plaintiffs"), by and through

their undersigned attorneys, hereby move the Court *ex parte* for a Temporary Restraining Order,

Expedited Discovery Order, Order Authorizing Alternate Service, and Order to Show Cause for

Preliminary Injunction, and state as follows:

## PRELIMINARY STATEMENT

This is a case brought by some of the nation's largest and most well-respected publishing

houses against a group of scofflaws that own and operate a blatantly and completely illegal

online business.  At the expense of Plaintiffs and the integrity of the academic process,

Defendants run multiple websites *dedicated* to selling unauthorized, wholesale copies of

publishers' copyrighted works.  Defendants knowingly and intentionally make these infringing

copies, which they store in digital format on their computers and then distribute to customers

upon payment of a fee.  Defendants are undoubtedly aware that their activities are illegal yet

persist in them nonetheless, profiting directly from the large-scale infringement and cheating

they cause.

Defendants are engaged in a practice that courts in this District and elsewhere uniformly

condemn.  Based on the nature and scope of Defendants' infringing activities, Plaintiffs will be

entitled to substantial damages, totaling millions of dollars.  In the circumstances presented, there

is every reason to believe that Defendants Farukh Khan, Joonwon Park, Jeong Hyun Chu, Masud

Karim, and Md. Rabiul Islam, who are likely located offshore, and the Doe Defendants (likely

also located offshore), will dissipate the assets necessary to satisfy, even in small part, the

Court's final judgment.  Accordingly, by this motion, Plaintiffs request:  (1) an order temporarily

restraining the assets in the accounts used by Defendants to receive funds or payments in

1

connection with their illegal scheme, and enjoining any further infringement; (2) leave to serve targeted expedited discovery to identify Defendants' true names, aliases, physical addresses, and to identify Defendants' accounts used to receive, transfer, or send funds or payments in connection with their illegal activities; (3) an order authorizing alternate service on Defendants; and (4) an order to show cause why the Court should not issue a preliminary injunction.

## STATEMENT OF FACTS

### A.   Plaintiffs' Businesses and Their Copyrighted Works.

Plaintiffs develop, market, distribute, license, and sell a comprehensive range of traditional and digital educational content and tools to professionals and students.  Compl. ¶ 17; Declaration of Steven Rosenthal ("Rosenthal Decl.") ¶ 5; Declaration of Patrick Murphy ("Murphy Decl.") ¶ 5; Declaration of Nicholas Tardif ("Tardif Decl.") ¶ 5; Declaration of Jessica Stitt ("Stitt Decl.") ¶ 5; Declaration of LaShonda Morris ("Morris Decl.") ¶ 5 (collectively, "Publishers' Decl.").  In particular, Plaintiffs are five of the largest and most successful textbook publishers in the United States and throughout the world.  *Id.*  Plaintiffs' textbooks, which they sell to students and others, are among the most popular and widely used titles in their fields.  *Id.*

Plaintiffs also publish instructor solutions manuals and test banks, which are important supplementary materials to textbooks.  Compl. ¶ 18; Publishers' Decl. ¶ 6.  Plaintiffs provide to professors and instructors, who adopt the related textbook in their courses, restricted access to instructor solutions manuals and test banks.  *Id.*  Instructor solutions manuals are guides that provide answers and solutions to questions contained within the textbook.  Compl. ¶ 18.  Test banks are sets of questions, and, in some instances, corresponding answers, to be used only by the professor who assigned the textbook for his or her course.  *Id.*  Professors and instructors use these supplementary materials to create lesson plans, homework assignments, and exams, and for

2

grading purposes.  *Id.*  When students obtain unauthorized access to test banks, however, the integrity of the educational process is compromised.  Compl. ¶ 18; Publishers' Decl. ¶ 6.  In addition, the value of the supplemental materials (and, as a result, the textbook adoption itself) is compromised if the supplemental materials are freely or widely available.  *Id.*  Accordingly, in order to preserve their pedagogical value, these supplemental materials are not generally distributed to the public.  *Id.*

Exhibit A to the Complaint is a list of a number of Plaintiffs' copyrighted works. Plaintiffs own or control the copyright in each of their respective works or derivative works listed on Exhibit A, among others (hereinafter "Plaintiffs' Works").  Compl. ¶ 19; Publishers' Decl. ¶ 10.  Plaintiffs have the exclusive right to reproduce and distribute Plaintiffs' Works.  *Id.* Plaintiffs or their predecessors or affiliates have duly registered their respective copyrights in Plaintiffs' Works as set forth on Exhibit A.  *Id.*

Instructor solutions manuals contain significant protected expression from the textbook. Compl. ¶ 20; Publishers' Decl. ¶ 7.  In some instances, instructor solutions manuals repeat the original questions or other original content verbatim from the textbook.  *Id.*  But even without such word-for-word copying, instructor solutions manuals are based upon, and necessarily copy from, the original questions and other protected expression from the textbook.  *Id.*  For instance, the answers in the solutions manual necessarily copy various creative decisions of the textbook author, including but not limited to:  (a) what knowledge or skills to test versus not test, and to what degree to test; (b) what examples, fact patterns, and hypotheticals to use to test and reinforce the material that the author chose to include in the book; and (c) the relationship and progression between the questions in the book to one another and to the material the author chose to include in the book versus omit.  *Id.*  Notably, instructor solutions manuals are specific to a

3

given textbook.  *Id.*  Even where a single publisher has multiple textbooks within a single field of study, it typically has a separate solutions manual per textbook that is unique to that particular book.  *Id.*  It is tailored to the pedagogical approach, including questions, of that particular book. If instructor solutions manuals did not need to so closely track the protected expression in the underlying textbook, they could be interchangeable across textbooks, which they are not.  *Id.*

Instructor solutions manuals and test banks contain additional protected expression beyond what is in the textbook.  Compl. ¶ 21; Publishers' Decl. ¶ 8.  In the way that myriad creative efforts go into creating or selecting questions, whether for inclusion in the textbook or its corresponding test bank, similar protected expression goes into the answers and solutions in the instructor solutions manuals and test banks.  *Id.*  Countless decisions are made concerning answer choices, wording, examples, approach, depth, and other substantive details.  *Id.*

Plaintiffs invest significant resources to publish their copyrighted works.  Compl. ¶ 22; Publishers' Decl. ¶ 16.  Plaintiffs make substantial investments, for example, in content creation and in promotion of their copyrighted works.  *Id.*  Plaintiffs would suffer serious financial injury if their copyrights were not enforced.  *Id.*  A substantial decline in their income from textbooks could cause Plaintiffs to cease publishing one or more deserving books or journals.  *Id.*  This would adversely impact the creation of new works, scholarly endeavor, and scientific progress. *Id.*

B.    **Defendants' Illegal Online Business.**

Defendants are Farukh Khan, Joonwon Park, Jeong Hyun Chu, Masud Karim, Md. Rabiul Islam, and Does 1-10, whose true identities and locations Plaintiffs do not currently know.  Compl. ¶¶ 11-16.  Defendants own, control, and are doing business as and through multiple illegal online sites, including but not limited to www.testbanksolution.com, www.testbankpdfdownload.com, www.testbankonline.com, www.testbankcart.com,

www.digitaltestbank.com, www.testbank007.com, www.solutionmanualcenter.com,

www.testbank-official.com, and www.solutionmanualonline.com (the "Infringing Sites" or

"Sites"), the sole object of which is to make money from infringement.  Compl. ¶ 23;

Declaration of Leo M. Lichtman ("Lichtman Decl.") ¶ 2.  Defendants also carry out their illegal

online operation through a number of email address ("Defendants' Email Addresses"), including

but not limited to farukhkhan2121@gmail.com, farukhkhan2131@outlook.com,

joonwonpark123@hotmail.com, findursol@gmail.com, testbankcentre@gmail.com,

testbankcentre@yahoo.com, hyanchu858@hotmail.com, kyubok2010@gmail.com,

aidforstudent@yahoo.com, aidforstudent@gmail.com, webmaster@testbankonline.com,

support@testbankcart.com, testbankcart@gmail.com, studyguidenetwork@gmail.com,

allsmtb@gmail.com, allsmtb@yahoo.com, mdrabiulislam1988@hotmail.com,

masudkarim1986@hotmail.com, smplustb@gmail.com, terrijay93@gmail.com,

admin@testbank007.com, bestsmtb@gmail.com, contactus@imfareed.com,

solutionmanualcentre@gmail.com, info@testbank-official.com, sales@testbank-official.com,

Barbara.lussiers@gmail.com, florence.kerin@gmail.com, examgo@yahoo.com,

info@solutionmanualonline.com, orderonline2014@gmail.com, and dishdash2010@gmail.com.

Compl. ¶ 24; Lichtman Decl. ¶ 5.  Defendants also operate under various names or aliases

("Defendants' Aliases"), including but not limited to the names Kyu Bok, Emily Brown, James

Smith, Ky Janathan, and Kevin Kabir.  Compl. ¶ 25; Lichtman Decl. ¶ 3.

     Through their highly interactive websites, Defendants distribute unauthorized copies of

Plaintiffs' Works to the public in violation of Plaintiffs' copyrights.  Compl. ¶ 26; Lichtman

Decl. ¶¶ 18-27.  At Defendants' Sites, purchasers or prospective purchasers can scroll through or

search for listings of the unauthorized digital copies of Plaintiffs' solutions manuals and test

banks, which Defendants made or obtained and maintain on computers Defendants own or

control.  Compl. ¶ 28.  The Infringing Sites list tens of thousands of instructor solutions manuals

and test banks for sale, and include a fully searchable catalog indexed by subject.  Compl. ¶ 32;

Lichtman Decl. ¶ 12.  For example, the Site located at www.solutionmanualcenter.com alone

lists over 10,000 works for sale, and the Sites located at www.testbankpdfdownload.com and

www.digitaltestbank.com collectively list another 10,000 works for sale.  *Id.*  Visitors can

interact with the sites, view information on the massive catalogue of items available for

purchase, and then move forward with the transaction.  Visitors can search by keyword, such as

title, author, or International Standard Book Number ("ISBN").  Compl. ¶ 28; Lichtman Decl. ¶

13.  Alternatively, a visitor can also browse titles by subject matter.  *Id.*  Prospective purchasers

can even download a free "sample" of the solutions manuals and test banks that Defendants offer

for sale, which typically contains the "first or second chapter" of Plaintiffs' copyrighted works.

Compl. ¶ 30; Lichtman Decl. ¶ 15.  Then, upon payment of a fee, Defendants distribute copies of

the supplementary material to their customers, including to students and other individuals located

in this District, in violation of Plaintiffs' copyrights listed on Exhibit A.  Compl. ¶ 26.  Thus, at

the touch of a few keystrokes, and armed with a credit card or other means of online payment,

such as a PayPal account, a visitor can purchase and download unauthorized copies of Plaintiffs'

and other publishers' solutions manuals and test banks.  Compl. ¶ 28.

Defendants' Infringing Sites receive thousands of unique visitors per month from

customers and prospective customers located throughout the United States, including this

District, as well as abroad.  Compl. ¶ 34; Lichtman Decl. ¶ 10, Ex. 6.  Indeed, one report

indicates that www.solutionmanualcenter.com received almost 40,000 visits in one month, and

over 67% of the web traffic came from visitors within the United States.  *Id.*

Defendants conduct their business *solely* over the Internet and make concerted efforts to conceal their true names and physical locations.  Compl. ¶ 38; Lichtman Decl. ¶ 4.  Defendants have attempted to conceal their identity and frustrate attempts to stop their unlawful activity by not putting any real names or physical addresses on the Infringing Sites and using a proxy service to register the majority of the domain names associated with their Sites, and providing materially false information to domain name registrars.  *Id*.  Defendants even list fake U.S.-based addresses on two of their Sites, to give customers the false impression that they are a legitimate company.  *Id.*  In addition, Defendants registered multiple domain names and established corresponding websites (as well as email accounts that can be tied to separate PayPal accounts), some with identical or duplicative content, all to avoid interruption of their illegal business should any one website or payment account be shut down.  Compl. ¶ 39; Lichtman Decl. ¶ 4.  Nevertheless, every single one of Defendants' Sites is linked to one another, either through domain name registration records, email addresses and PayPal accounts, or identical or nearly identical IP addresses and site content.  Compl. ¶ 39; Lichtman Decl. ¶¶ 6-9.

While pirates such as Defendants are notorious for and adept at hiding their identities and locations, including making changes to their service providers to avoid being shut down, Defendants currently utilize the services of a number of companies in the United States in connection with their infringing activities.  In particular, Defendants employ (a) domain name registration services through GoDaddy.com, LLC and Public Domain Registry, and (b) payment processing services through PayPal and Woo Commerce.  Compl. ¶ 35; Lichtman Decl. ¶ 11.  The foregoing list is by no means exhaustive.

Defendants' reproduction and distribution of Plaintiffs' valuable copyrighted works takes place without authorization and without compensation to Plaintiffs, their authors, and others in

the legitimate chain of commerce.  Compl. ¶ 36; Publishers' Decl. ¶ 15.  On the contrary, Defendants' actions described herein benefit Defendants alone, for their commercial purposes and gain.  Compl. ¶ 36.  As a result of Defendants' actions, wholesale, unauthorized copies of Plaintiffs' solutions manuals and test banks are distributed, with no way to prevent their viral downstream dissemination.  Compl. ¶ 36; Publishers' Decl. ¶ 15.  Such infringing activity steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments and diminishes interest among teaching professionals to use the associated textbooks for their classes.  *Id.*  Moreover, Defendants' sales corrupt the educational process.  Compl. ¶ 36.

Defendants are well aware of the enormous infringement and cheating that they cause. Compl. ¶ 37.  Defendants knowingly and intentionally designed, built, and operate a business devoted to selling copies of others' proprietary works, including Plaintiffs' copyrighted works. *Id.*  Defendants have done so, and continue to do so, with the full awareness that they have not been granted any license, permission, authorization, or consent to copy or distribute such works. *Id.*  In fact, Defendants distribute files that on their very face contain the publisher's copyright notice on each and every page.  Compl. ¶ 30; Lichtman Decl. ¶ 15.

Defendants continue to actively operate and grow their business, including by adding "new products" to Defendants' Sites, which, of course, represent nothing more than additional infringements.  Compl. ¶ 38.  As mentioned above, Defendants also have hedged against enforcement action that might be taken against their illegal business by effectively creating a business continuity plan should any one Infringing Site or payment account be shut down. Compl. ¶¶ 27, 39; Lichtman Decl. ¶¶ 4, 6-9.

Defendants have caused Plaintiffs significant and substantial harm, including in this District, and Defendants are aware that they have caused Plaintiffs to suffer such harm.

## ARGUMENT

## I.     THIS COURT HAS PERSONAL JURISDICTION

Prior to discovery, a plaintiff need only allege facts sufficient to create a prima facie showing of jurisdiction.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("'[P]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990))); *see also Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d at 196 ("In *Hoffritz*, we said that though a plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a *prima facie* showing that jurisdiction exists prior to the holding of an evidentiary hearing."); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985) ("Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists . . . .").

New York's long-arm statute is satisfied on multiple grounds, including § 302(a)(1) of the New York Civil Practice Law and Rules ("CPLR").  Plaintiffs have alleged that Defendants own and operate a highly interactive website through which they have sold and transmitted infringing copies of Plaintiffs' instructor solutions manuals and test banks to customers in New York.  *See* Compl. ¶¶ 26, 34.  These alleged activities are the very basis of Plaintiffs' copyright infringement claims and, thus, support personal jurisdiction over Defendants in New York.  Section 302(a)(1) requires nothing more.  It provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state….

CPLR § 302(a)(1).[1]

In addition, to the extent Defendants are not located in New York, personal jurisdiction exists under CPLR § 302(a)(3).  Section 302(a)(3) allows for specific personal jurisdiction over someone who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Here, as Plaintiffs allege, Defendants committed copyright infringement—a tort—over the Internet.[2]  *See Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013) ("Copyright infringement is a commercial tort.") *adopted by* 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013).  The situs of Plaintiffs' injury is New York where the majority of Plaintiffs have their principal place of business and where all Plaintiffs conduct a significant amount of their business.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 501 (2d Cir. 2011) (holding that where a New York corporation's copyrights are infringed via the Internet, the situs of the corporation's injury

---

[1] *See also Warner Bros. Entm't v. Ideal World Direct*, 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (finding personal jurisdiction in copyright infringement case over defendant who operated websites which "transmit[ted] files to customers in exchange for membership fees") (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)); *see also Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2008 WL 4450259, 2008 U.S. Dist. LEXIS 75329, at *10-12 (S.D.N.Y. Sept. 29, 2008) (finding personal jurisdiction in copyright infringement case over defendant who operated interactive website that provided users with software, transferred music files to customers, and allowed the exchange of emails, where such activity occurred with New York users and formed the basis for plaintiffs' claims).

[2] The jurisdictional analysis under CPLR § 302(a)(3) assumes that Defendants, whose true location is unknown, operate the Infringing Sites outside New York.  However, even if Defendants operated the Infringing Sites within New York, personal jurisdiction would still exist over Defendants for Plaintiffs' copyright infringement claims under CPLR § 302(a)(2).

is New York).[3]  Defendants should have reasonably expected their cyber-piracy to have

consequences in New York.  *See McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp.

2d 252, 256 (S.D.N.Y. 2005) ("It is reasonably foreseeable that the provision of materials that

infringe the copyrights and trademarks of a New York company will have consequences in New

York . . . .").  In addition, Defendants operated their illegal scheme internationally, with a

particular emphasis on the United States, deriving substantial revenue from international

commerce.  *See* Compl. ¶ 34 (citing web traffic report showing nearly 70% of visitors to the

Infringing Site were located in the United States); Lichtman Decl. ¶ 10 (same).  Accordingly, the

Court has personal jurisdiction over Defendants under CPLR § 302(a)(3).

A separate due process analysis is unnecessary here.  New York's long-arm statute does

not extend to the limit of due process.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir.

2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because

application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); *Ingraham v. Carroll*,

687 N.E.2d 1293, 1295 (N.Y. 1997) ("The subdivision 302(a)(3) was not designed to go to the

full limits of permissible jurisdiction.  The limitations contained in subparagraphs (i) and (ii)

were deliberately inserted to keep the provision well within constitutional bounds." (internal

quotations and citations omitted)).  Nonetheless, the requisite minimum contacts in a due process

analysis are clearly satisfied under the circumstances of this case such that asserting personal

jurisdiction here does not offend traditional notions of fair play and substantial justice.

Defendants sold pirated content to New York consumers, *cf.* Compl. ¶ 26, and infringed the

registered copyrights of Plaintiffs—most New York-based corporations—causing them injury in

---

[3] Three of the five Plaintiffs—MHE, Elsevier, and Pearson—are companies headquartered in
New York.  Compl. ¶¶ 6, 7, 10.  In addition, a fourth Plaintiff—Wiley—is incorporated in New
York.  *Id.* ¶ 8.  Furthermore, all Plaintiffs suffer lost business in New York as a result of
Defendants' digital piracy.  *Cf.* Compl. ¶ 37.

New York, *see* Compl. ¶¶ 26, 34; Tardif Decl. ¶¶ 15-16; Rosenthal Decl. ¶¶ 15-16; Morris Decl.

¶¶ 15-16; Murphy Decl. ¶¶ 15-16.

## II.   DEFENDANTS MEET THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This Court has the authority to "grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *cf.*

Fed. R. Civ. P. 65. Moreover, this Court has recently granted temporary restraining orders and

preliminary injunctions, in forms substantially similar to the relief sought here, in related cases

involving the same Plaintiffs, the same claims, and nearly identical fact patterns. *See, e.g.,*

*Elsevier, Inc. v. Does 1-10*, No. 16 Civ. 1245 (RA), Ex Parte Order (Feb. 29, 2016) (Dkt. No. 13)

and Prelim. Inj. (Mar. 8, 2016) (Dkt. No. 14); *Pearson Education, Inc. v. Jabber*, No. 15 Civ.

1244 (PAE), Ex Parte Order (Feb. 29, 2016) (Dkt. No. 6), and Prelim. Inj. (Mar. 8, 2016) (Dkt.

No. 16); *McGraw-Hill Global Educ. Holdings v. Quttaineh*, No. 15 Civ. 2578 (VEC), Order

(Apr. 3, 2015) (Dkt. No. 3) and Prelim. Inj. and Asset Restraining Order (Apr. 27, 2015) (Dkt.

No. 27).

Both temporary restraining orders and preliminary injunctions require Plaintiffs to

establish: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions

going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer

irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their]

favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the

"'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*

*v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd.*

*v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003). The "'serious questions' standard permits a district

court to grant a preliminary injunction in situations where it cannot determine with certainty that

12

the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).  In this case, the Court should grant the requested relief because Plaintiffs can demonstrate each of the above elements.

### A.        Plaintiffs are Likely to Succeed on All of Their Claims Against Defendants.

There is no question that Defendants are infringing on Plaintiffs' copyrights.  Defendants brazenly advertise on their website the sale of complete digital copies of Plaintiffs' copyrighted works.  Compl. ¶ 29; Lichtman Decl. ¶ 12.

The Copyright Act provides, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ."  17 U.S.C. § 501.  "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).  The word "copying" means an infringement of any of the copyright holder's exclusive rights in its original work, including the reproduction and distribution rights. *Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th. Cir. 2001)); 17 U.S.C. § 106.  In addition to liability for directly infringing, one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005).  "A party is liable for contributory infringement if, 'with knowledge of the infringing activity,' it 'induces, causes, or materially contributes to the infringing conduct of another.'"  *Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971)).

13

Plaintiffs are owners of the exclusive rights under copyright for each of the textbooks, instructor solutions manuals, and test banks set forth on Exhibit A of the Complaint.  Compl. ¶ 19; Publishers' Decl. ¶ 10.  Defendants, without permission from Plaintiffs, have reproduced and distributed Plaintiffs' Works.  Compl. ¶ 26; Publishers' Decl. ¶ 15.  Indeed, Defendants expressly state that they deliver digital copies of such instructor solutions manuals and test banks.  *See* Compl. ¶¶ 28, 31; Lichtman Decl. ¶ 12; s*ee also Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1075 (2d Cir. 1992) (finding party that had made express representation "to the world" was not subsequently permitted to make an inconsistent claim so as to better serve its position in litigation).  Through test purchases and downloading samples offered by Defendants on the Infringing Sites, Plaintiffs have confirmed that Defendants make and deliver unauthorized electronic copies of Plaintiffs' copyrighted works, Compl. ¶ 33; Lichtman Decl. ¶¶ 18-27, thereby directly and/or secondarily infringing Plaintiffs' exclusive rights under copyright.

Plaintiffs satisfied the registration requirements before commencing this case.[4]  Plaintiffs have obtained separate copyright registrations for the test banks and some of the instructor solutions manuals listed on Exhibit A.  Compl. ¶ 19, Ex. A; Tardiff Decl. ¶ 10; Stitt Decl. ¶ 10; Morris Decl. ¶ 10.  Where Plaintiffs have not obtained separate registrations for the instructor

---

[4] Copyright automatically inheres upon the work's creation.  *See* 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . . .").  Registration with the United States Copyright Office is not required to obtain copyright protection.  *See* 17 U.S.C. § 408(a) ("At any time during the subsistence of [the copyright], the owner of copyright or of any exclusive right in the work may obtain registration of the copyright . . . . Such a registration is not a condition of copyright protection.").  However, the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  A copyright registration also creates certain benefits.  *See, e.g.,* 17 U.S.C. § 410(c) (providing that a certificate of copyright registration creates a *prima facie* case that the copyright is valid).

solutions manuals on Exhibit A, Plaintiffs rely upon their copyright registrations for the underlying textbooks.  Rosenthal Decl. ¶ 10; Murphy Decl. ¶ 10; Stitt Decl. ¶ 10; Morris Decl. ¶ 10.  Plaintiffs can do so because their unregistered instructor solutions manuals are derivative works of the registered textbooks.  *Id.*

A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . . [including a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101.  The owner of a derivative work may maintain a copyright action against an alleged infringer, based on any infringement of the pre-existing work from which the derivative work is derived.  *See SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 214 (S.D.N.Y. 2009) (S.D.N.Y. 2009) ("[T]o the extent unregistered versions incorporate protectable elements of a registered version and were copied in an unauthorized manner, the infringement of the underlying work, through the unauthorized copying of the derivative works, serves as the basis for … an action based on the registration of the underlying work.") (internal quotations and citations omitted); *Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 (PGG), 2013 WL 1245456, 2013 U.S. Dist. LEXIS 42758, at *13-14 (S.D.N.Y. Mar. 26, 2013) (same); *see also* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][b] (2008) (explaining that "since a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright [owner's] consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain" a suit for copying an unregistered derivative work).

Some judges in this district have broadly concluded a publisher's instructor solutions manuals are derivative works of the publisher's underlying textbooks such that the unauthorized

copying of the unregistered instructor solutions manuals infringes the copyright in the underlying registered textbook.  *See Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034 (DAB)(AJP), 2009 WL 3429610, 2009 U.S. Dist. LEXIS 101600 (S.D.N.Y. Oct. 27, 2009), *report and recommendation adopted*, 2009 WL 4884098, 2009 U.S. Dist. LEXIS 117701 (S.D.N.Y. Dec. 16, 2009); *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK)(KNF), 2010 WL 3744033, 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 155149 (S.D.N.Y. May 11, 2011).  Other judges in this district, however, have found that the copyright registration for the underlying registered textbook protects the accompanying unregistered instructor solutions manuals only to the extent the solutions manual contains some of the protected material from the registered textbook.  *See Pearson Educ., Inc. v. Ishayev*, 9 F. Supp. 3d 328 (S.D.N.Y. 2014); *Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS)(JCF), 2013 U.S. Dist. LEXIS 48954 (S.D.N.Y. Apr. 3, 2013).

It is unnecessary for the Court to confront the split of authority on this point.  As to those solutions manuals for which Plaintiffs rely upon the registration for the underlying textbook, rather than a separate registration for the solutions manual, Plaintiffs satisfy the more stringent view espoused in *Ishayev* and *Frances*.  That is, Plaintiffs have shown that Defendants have made unauthorized copies or distributions of instructor solutions manuals that repeat protected material from their respective underlying textbooks.  Morris Decl. ¶ 13, Morris Ex. 1; Murphy Decl. ¶ 13, Murphy Ex. 1; Rosenthal Decl. ¶ 13, Rosenthal Ex. 1.  Accordingly, Plaintiffs have shown a likelihood of success on the merits or, alternatively, sufficiently serious questions going to the merits to make them a fair ground for litigation.

### B.   Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief.

Irreparable injury in copyright suits can be harm that "occurs to the parties' legal

interests" and that "cannot be remedied after a final adjudication."  *Salinger*, 607 F.3d at 81

(footnote omitted).  Harm may be irreparable where the loss is difficult to replace or measure, or

where plaintiffs should not be expected to suffer the loss.  *Id.*  Types of irreparable harm may

include threats of "market confusion," loss of goodwill, or facing the "notoriously difficult"

prospect of proving loss of sales.  *See id.*  Although courts may not "presume irreparable harm,"

*Salinger,* 607 F.3d at 82, courts have consistently found that "[h]arm can be irreparable, and

adequate remedies at law lacking, where . . . absent an injunction, the defendant is likely to

continue infringing the copyright," *Broad. Music, Inc. v. PAMDH Enters., Inc*., No. 13 Civ. 2255

(KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409, at *13-14 (S.D.N.Y. June 19, 2014);

*see also Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL

1883474, 2014 U.S. Dist. LEXIS 64467, at *36 (S.D.N.Y. May 9, 2014); *Hounddog Prods.,*

*L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

There can be little doubt that Plaintiffs are likely to suffer irreparable harm unless this

Court issues a temporary restraining order and preliminary injunction pending the resolution of

this case.  Defendants deliberately operate a business devoted to the unauthorized reproduction

and distribution of Plaintiffs' and others' copyrighted works.  Defendants' infringing activities

are extensive, with thousands of visitors to their websites where they sell a very large inventory

of unauthorized digital copies of Plaintiffs' copyrighted works.  Absent an injunction,

Defendants will no doubt continue infringing—indeed, that is the whole point of their illegal

business.  In addition, given the anonymous and blatantly illegal manner in which Defendants

conduct business, Defendants are likely to try to render themselves judgment proof.

### C.    Plaintiffs Satisfy the Remaining Two Equitable Factors.

The remaining two factors decidedly support injunctive relief.  In terms of the balance of

hardships, "it is axiomatic that an infringer of copyright cannot complain about the loss of ability

to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013) (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)).  Further, injunctive relief serves the public interest.  It is a premise of copyright law that "the public has a compelling interest in protecting copyright owners' marketable rights to their work." *WPIX*, 691 F.3d at 287.  "Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works." *Id.*  Accordingly, Plaintiffs have met their burden to show that injunctive relief enjoining Defendants from further infringing Plaintiffs' copyrights is warranted.

## III.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS

It is well settled that a federal district court may issue injunctive relief to preserve assets as security for a potential monetary judgment.  It is also clear that one is warranted in this case.

### A.    The Court Possesses Ample Authority Under the Federal Rules And Its Inherent Equitable Powers to Attach Defendants' Assets.

The Court has authority to grant the requested relief under the Federal Rules of Civil Procedure.  The Court may freeze Defendants' assets for a potential judgment through a Rule 65 preliminary injunction.  S*ee, e.g., Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986) (preventing transfer or encumbrance of properties that would place them beyond reach or prevent their reconveyance); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,* 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("Preliminary injunctions are . . . appropriate to thwart a defendant from making a judgment uncollectible."); *Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95 Civ. 9341 (RWS), 1997 WL 223077, 1997 U.S. Dist. LEXIS 5931, at *13 (S.D.N.Y. May 1, 1997) ("[T]he United States Supreme Court and the

Second Circuit have made Rule 65 available to secure assets for the ultimate judgment."); *cf. In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets . . . .") (quotations and citations omitted).

Similarly, independent of its authority under the Federal Rules of Civil Procedure, the Court also has a "great deal of discretion" in "fashioning a remedy pursuant to its inherent equitable powers." *Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008). "[A] preliminary asset freeze is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief. Where profits are available as a final remedy – as they are under 17 U.S.C. § 504 – a preliminary asset freeze is an appropriate provisional remedy." *Lions Gate Films, Inc. v. Doe*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032, at *16-17 (C.D. Cal. Aug. 18, 2014) (internal quotations and citations omitted). Here, Plaintiffs seek an equitable accounting and disgorgement of Defendants' illicit profits under the Copyright Act. Thus, the Court may exercise its equitable authority to preserve the status quo and maintain its ability to provide an equitable remedy. *See Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-4500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711, at *11 (N.D. Cal. Sept. 14, 2012). [5]

---

[5] The Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) does not divest this Court of its equitable authority to freeze assets. In *Grupo Mexicano*, the Supreme Court held that the "District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333. The Supreme Court, however, made a critical distinction between general, unsecured creditors and those, like Plaintiffs, possessing equitable interests in the property at issue and seeking equitable relief. *Id.* at 324-26. Indeed, the Second Circuit recently ruled that courts maintain their equitable power to issue a prejudgment asset freeze "where such relief was traditionally available: where the plaintiff is

In terms of the equitable factors, Plaintiffs have already shown that they are likely to succeed on the merits. *See supra* Section II.A.   Moreover, irreparable harm exists where "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999).   Accordingly, a demonstration of a defendant's "intent to frustrate any judgment on the merits" qualifies as a showing of "irreparable harm."   *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04 Civ. 7395 (RWS), 2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843, at *12-13 (S.D.N.Y. Nov. 20, 2006); *see also Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331, at *57 (N.D.N.Y. Nov. 8, 2000) ("[D]emonstration of intent to frustrate a judgment will be found to satisfy the requirement of a showing of irreparable harm.") (citing *Signal Capital Corp. v. Frank,* 895 F. Supp. 62, 64 (S.D.N.Y.1995)); *Motorola,* 2009 U.S. Dist. LEXIS 40660, at *12-13 ("[A] plaintiff's showing that a defendant's actions are likely to render a judgment uncollectible qualifies as a showing of irreparable harm."); *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165, 169-70 (S.D.N.Y. 2006) (finding irreparable injury showing satisfied where "there is substantial reason to believe that defendants,

---

pursuing a claim for final equitable relief and the preliminary injunction is ancillary to the final relief."   *Gucci Am., Inc. v. Bank of China,* 768 F.3d 122, 131 (2d Cir. 2014) (citing *Grupo Mexicano,* 527 U.S. at 319, and *De Beers Consol. Mines v. United States,* 325 U.S. 212, 219-20 (1945)).   "[C]ourts since *Grupo Mexicano* have found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Quantum,* 144 F. Supp. 2d at 250 n.9; *see also In re Comverse Tech., Inc.,* No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, 2006 U.S. Dist. LEXIS 62227, at *7 (E.D.N.Y. Aug. 31, 2006) ("[Plaintiffs'] claims are equitable in nature, and therefore an injunction seizing the . . . Defendants' assets derived from their alleged wrongful conduct may be proper."); *Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660, at *13 n.4 (E.D.N.Y. May 14, 2009) (finding that *Grupo Mexicano* is "distinguishable" from "an action to recover damages for willful violations of the trademark provisions of the Lanham Act"); *Adelphia Comm'ns Corp. v. Rigas,* No. 02 Civ. 8495 (GBD), 2003 WL 21297258, 2003 U.S. Dist. LEXIS 9349, at *14 (S.D.N.Y. June 4, 2003) (distinguishing case where "plaintiff here seeks not only money damages, but also equitable relief").

unless enjoined, will continue to attempt to frustrate plaintiff's efforts to collect the judgment").

Here, circumstances overwhelmingly evidence Defendants' intent to frustrate the enforcement of a judgment. Defendants deliberately set up a business that exists solely to sell unauthorized copies of Plaintiffs' and other publishers' copyrighted works. In the course of their illicit operations, Defendants have gone to great lengths to hide their identities and locations. They are not legitimate businesses, which typically have readily identifiable assets that may be used to satisfy judgments. Rather, given their efforts to mask their whereabouts, there is a strong chance they may drain or move accounts in an effort to be "judgment proof." *See* Compl. ¶¶ 38-39; Lichtman Decl. ¶ 4; *cf. Microsoft Corp. v. Jun Yan*, No. 3:10-cv-162 (VLB), 2010 U.S. Dist. LEXIS 14934, at *7 (D. Conn. Feb. 18, 2010) (granting temporary restraining order and preliminary injunction freezing assets where defendants operated online piracy operation, used multiple and false contact information, switched ISPs, and used "WHOIS protection services" to frustrate detection and avoid compliance with copyright laws); *Elsevier, Inc. v. Does 1-10*, No. 16 Civ. 1245 (RA), Ex Parte Order (Feb. 2, 2016) (Dkt. No. 13) ("[T]he Court finds that Defendants' alleged use of multiple websites, email addresses, and aliases to operate their allegedly infringing enterprise demonstrates the likelihood that, if Defendants were to receive advance notice of Plaintiffs' application for an injunction freezing Defendants' assets, Defendants could moot Plaintiffs' ultimate relief by moving their assets beyond the reach of the Court.").

Finally, the balance of hardships and public policy considerations decidedly favor Plaintiffs. A "judgment of some amount" is more than "likely to be entered in plaintiff's favor, and plaintiff bears a significant risk that defendant's assets will prove inadequate to satisfy such a judgment." *Serio v. Black, Davis & Shue Agency, Inc.,* No. 05 Civ. 15 (MHD), 2005 WL

3642217, 2005 U.S. Dist. LEXIS 39018, at *61 (S.D.N.Y. Dec. 30, 2005).  "Without an injunction," Plaintiffs "would suffer a hardship" because they are at risk of "not be[ing] paid monies that . . . are justly due and owed" as compensation for the myriad harms Defendants' illegal conduct has caused them.  *Quantum,* 144 F. Supp. 2d at 249 (finding the "balance of hardships also tips decidedly in" Plaintiffs' favor).  On the other hand, Defendants will suffer no cognizable hardship.  Defendants have no right to use the profits of an illegal enterprise to continue supporting their unlawful activities or for personal uses.  There is no conceivable public interest in allowing Defendants to continue causing and profiting from egregious infringement.

**B.**  **The Court Also Possesses Authority Under New York Law to Attach the Defendants' Assets.**

In addition to the federal rules and its equitable powers, this Court may also act pursuant to New York law.  Rule 64 of the Federal Rules of Civil Procedure provides, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64.   New York law provides that a plaintiff is entitled to prejudgment attachment if it can show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y. C.P.L.R. § 6212(a).

As discussed above, Plaintiffs have a cause of action and it is probable – indeed overwhelmingly likely – that Plaintiffs will succeed on the merits.[6]  *See supra* Section II.A.

---

[6] To show a probability of success on the merits for purposes of an application for an order of attachment, a plaintiff must present facts sufficient to establish a *prima facie* case.  *See Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40, 41 (N.Y. App. Div. 1997).  "Although evidentiary facts making out a *prima facie* case must be shown, plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts

Based on the 61 copyrighted works identified on Exhibit A, Plaintiffs are entitled to between $45,750 and $9,150,000 in statutory damages as a result of Defendants' copyright infringement. *See* 17 U.S.C. § 504(c) (providing for statutory damages of not less than $750 per infringed work and up to $150,000 per work for willful infringement).  As Defendants have no known counterclaims against Plaintiffs, Publishers' Decl. ¶ 17, the requirement that the amount demanded exceeds all known counterclaims is also met.  Thus, the only remaining element is whether one or more grounds for attachment provided in Section 6201 exist.

Sections 6201(1) and (3) of the CPLR each provides grounds for an attachment in this case.  Section 6201(1) provides for attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state."  N.Y. C.P.L.R. § 6201(1).  Section 6201(3) of the CPLR provides grounds for an attachment where the defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . ."  N.Y. C.P.L.R. § 6201(3).

Here, two of the named Defendants appear to reside in Bangladesh, and the locations for the other named Defendants are currently unknown because Defendants actively conceal their locations.  Compl. ¶¶ 11-15; Lichtman Decl. ¶ 4.  Defendants deliberately run an entirely illegal business and go to great lengths to do so anonymously.  Compl. ¶ 38; Lichtman Decl. ¶ 4.  Once given notice, Defendants can be expected to render much more difficult even partial satisfaction of any judgment.  Thus, attachment here is appropriate under CPLR §§ 6201(1) and (3).  *See ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217, 221-22 (2d Cir. 1983) (upholding an order

stated."  *Id.*  (citation omitted).

23

of attachment under § 6201(1) based on sporadic contacts with New York, insufficient assets to

satisfy the potential judgment, and questionable business practices); *Ayyash v. Bank Al-Madina*,

233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiff's motion for prejudgment attachment

under CPLR 6201 where defendants are "foreign individuals and corporations who have both

incentive and capacity to hide their assets"); *Graubard Mollen Dannett & Horowitz v.*

*Kostantinides*, 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (finding attachment under CPLR §

6201(1) appropriate where plaintiff sought to attach defendant's bank account, because "[t]hese

accounts, by nature are liquid and can be easily transferred from the jurisdiction by a simple

telephone call"); *cf. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.,*

*Inc.*, 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud

or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3)

is usually inferred from the circumstances.").

## C. *Ex Parte* Relief Is Warranted.

If Defendants receive advance notice of the temporary restraining order attaching

Defendants' assets, Defendants will have the opportunity to moot Plaintiffs' ultimate relief

simply by moving their assets to another account beyond the reach of this Court.  Accordingly,

based on the circumstances of this case, Defendants' assets associated with their illegal activities

should be temporarily restrained or attached on an *ex parte* basis.  This Court has the authority to

proceed in this fashion.

Rule 65 of the Federal Rules of Civil Procedure provide that a court may issue a

temporary restraining order without written or oral notice if, by affidavit or verified complaint,

Plaintiffs show that "immediate and irreparable injury, loss, or damage will result … before the

adverse party can be heard in opposition . . . ."  Fed. R. Civ. P. 65(b); *see also U2 Home Entm't,*

*Inc. v. Bowery Music City, Inc.,* No. 03 Civ. 8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist.

LEXIS 21992, at *3-4 (S.D.N.Y. Dec. 8, 2003).  New York law similarly authorizes the Court to

enter a temporary order of attachment without notice.  Section 6210 of the CPLR provides,

"Upon a motion on notice for an order of attachment, the court may, without notice to the

defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as

provided in subdivision (b) of section 6214."  N.Y. C.P.L.R. § 6210; *see also Libancell S.A.L. v.*

*Republic of Leb.*, No. 06 Civ. 2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442, at

*5-6 (S.D.N.Y. May 16, 2006) ("New York allows for the entry of an *ex parte* temporary

restraining order pending the outcome of a motion on notice for an order of attachment.").

### D.        The Court Should Require No Bond or, in the Alternative, a Minimal Bond.

It is well established in the Second Circuit that Rule 65(c) invests the district court wide

discretion as to the amount of security required, if any.  *See Doctor's Assocs. v. Distajo*, 107

F.3d 126, 136 (2d Cir. 1997).  In particular, the court may "dispense with the bond requirement

'where there has been no proof of likelihood of harm.'"  *See id.* (quoting *Doctor's Assocs. v.*

*Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)); *see also DeWitt Stern Group, Inc. v. Eisenberg,* No. 13

Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y. June 4,

2013) (finding bond requirement unnecessary).

Plaintiffs respectfully submit that the Court should exercise its discretion to dispense with

the filing of a bond in this case.  As discussed above, there is no realistic likelihood of harm to

Defendants in this case because there is no evidence that Plaintiffs' requested injunction will

cause any harm other than stopping Defendants' unlawful conduct.

### IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

Plaintiffs seek discovery to obtain information that will help them identify the Doe

Defendants and the locations of all the Defendants so that this action may proceed and prevent

Defendants from frustrating the Court's ability to provide an appropriate remedy.  While discovery generally must await the parties' Rule 26(f) conference, the Court can order otherwise. Fed. R. Civ. P. 26(d)(1).  This is the classic case where such an order is not only appropriate, but is necessary.  Plaintiffs cannot conduct a Rule 26(f) conference because they do not know the Defendants' true names and locations.

### A.    <u>Legal Standard</u>

Courts in this district apply a "flexible standard of reasonableness and good cause" to determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)).  In *Stern v. Cosby*, then-District Judge Chin explained that this District's flexible standard of "reasonableness" and "good cause" allows for review of an application to proceed on an expedited basis under what "is reasonable in light of all the circumstances."  246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing cases).

Even more pertinent here, "[c]ourts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe Defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." *Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, 2013 U.S. Dist. LEXIS 129749, at *4 (S.D.N.Y. Sept. 11, 2013); *see also Arista Records LLC v. Doe*, 604 F.3d 110, 117-24 (2d Cir. 2010); *Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968, 2012 U.S. Dist. LEXIS 77469, at *1 (S.D.N.Y. June 1, 2012) (finding good cause for expedited discovery "because, without it, Plaintiff will not be able to ascertain the identities of the Doe defendants or to effect service upon them").  Expedited discovery "is routinely granted in actions involving infringement and unfair competition." *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58

(S.D.N.Y. Oct. 14, 1997) (citing cases); *see also Arista Records v. Doe*, 604 F.3d at 117-24

(affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet

users allegedly committing copyright infringement); *Living Scriptures, Inc. v. Doe*, No. 1:10 cv

0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968, at *4 (D. Utah Nov. 10, 2010)

(granting *ex parte* motion for expedited discovery from PayPal in copyright infringement case).

      In addition to whether a movant has stated a *prima facie* case and an inability to identify

the defendants absent a court order, courts look to the following additional factors in determining

whether to allow expedited discovery: (1) the necessity of the subpoenaed information to

advance the claim; (2) the specificity of the discovery request; and (3) the defendant-user's

expectation of privacy.  *See Bloomberg, L.P. v. Doe*, No. 13 Civ. 01787 (LGS), 2013 WL

4780036, 2013 U.S. Dist. LEXIS 130034, at *6-7 (S.D.N.Y. June 26, 2013); *Sony Music Entm't

Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565-67 (S.D.N.Y. 2004).  Plaintiffs easily meet these

requirements.

      **B.**     <u>**Plaintiffs Satisfy the Factors for Good Cause**</u>

      As discussed above in Section II.A, *supra*, Plaintiffs have shown a *prima facie* case for

copyright infringement.  Plaintiffs also satisfy the remaining requirements for good cause

because:  1) Plaintiffs have a substantial need for the discovery; 2) they seek discrete information

tailored to identify Defendants, their whereabouts, and to prevent them from moving their illegal

profits beyond the reach of this Court and frustrating the Court's ability to render an equitable

remedy; and 3) Plaintiffs' need for the information substantially outweighs any argument that

Defendants have as to their expectation of privacy in the circumstances here.

      Without the ability to uncover the true names and identities of Defendants, Plaintiffs

cannot name and serve the proper defendants and will be unable to litigate its claims.  There is

simply no other means for Plaintiffs to ascertain Defendants' true identities without the requested

discovery.  Accordingly, Plaintiffs have a substantial need for the discovery.

As laid out in Plaintiffs' proposed order, Plaintiffs' request seeks discrete information sufficient to identify Defendants and prevent Defendants from attempting to frustrate Plaintiffs' ability to obtain the equitable remedy to which they are entitled.  Plaintiffs do not and will not seek any merits-related discovery.  The proposed request is narrow in scope in that, if the Court grants Plaintiffs' request, the subpoenas will seek only Defendants' true names, current (and permanent) addresses, email, and identification of Defendants' accounts with PayPal and/or other financial institutions or payment processing companies associated with Defendants' illegal business.

Lastly, Plaintiffs' need for the subpoenaed information outweighs any argument that Defendants have a cognizable expectation of privacy and anonymity.  Defendants are "entitled only to a 'minimal expectation of privacy' . . . where Plaintiff [has] alleged what appear to be meritorious [intellectual property] infringement claims and must determine Defendant's identity in order to litigate those claims."  *Bloomberg*, 2013 U.S. Dist. LEXIS 130034, at *9; *see also Sony Music*, 326 F. Supp. 2d at 562-67 ("[D]efendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims").  As the Second Circuit in *Arista Records v. Doe* found, a defendant's "expectation of privacy for sharing copyrighted [materials] through an online file-sharing network [is] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement."  604 F.3d at 124.  The court said further, "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  604 F.3d at 118; *see also Bloomberg,* 2013 U.S. Dist. LEXIS 130034, at *6.

28

Accordingly, Plaintiffs meet all of the factors for immediate, limited discovery to identify Defendants, including their names, aliases, contact information, and the financial accounts linked to their illegal activity.

## V.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS

The Court may authorize alternate service under the applicable federal and New York rules.  Federal Rule of Civil Procedure 4(e)(1) provides that service may be made upon an individual within any judicial district of the United States according to "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  If Defendants are located in the United States, New York's service of process rules apply.  Alternatively, if Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies.  Applying either New York law for individuals in the United States or federal Rule 4(f) for individuals abroad, alternate service, and, in particular, service by email, is available and within the Court's discretion.

Defendants operate and conduct an international, illegal online business.  Plaintiffs believe that Masud Karim and Md. Rabiul Islam reside in Bangladesh, but do not currently know where any of the other Defendants reside because Defendants have gone to great lengths to conceal their locations.  *See* Compl. ¶ 38; Lichtman Decl. ¶ 4.  While Defendants have registered their domain names with either a proxy service or materially false information to hide their identity, and have attempted to conceal their whereabouts, there is no question that Defendants regularly use email for purposes of operating their illegal online business.  Lichtman Decl. ¶ 5. Defendants' Email Addresses are used in connection with the Infringing Sites to provide payment instructions to customers, to accept payment for orders placed on the Infringing Sites, and for communicating with purchases and prospective purchasers regarding the infringing

products Defendants sell on the Sites, for support with downloaded files, to send confirmations of payment, and to provide a link to purchasers to download their unauthorized solutions manuals and test banks. *Id.* Under these circumstances, service of process by email is appropriate.

A.   **New York CPLR § 308 Authorizes Alternate Service on Individuals in the United States.**

The New York Civil Practice Law and Rules § 308(5) provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of §308 all require that a plaintiff know the whereabouts or home or business address of a defendant. Thus, for the reasons explained above, service via §308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method. Moreover, courts in New York have authorized service of process by email where service by traditional methods was impracticable. *See, e.g., Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) (noting that both New York courts and federal courts have authorized email service of process as an appropriate method and affirming the trial court's order allowing service upon defendant via email).

B.   **Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.**

Federal Rule of Civil Procedure 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007)

30

(internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternative service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013).  Indeed, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3).  *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *8.  Alternative service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims.  *See Rio Props.*, 284 F.3d at 1017-18 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process").

1.     **Service of Process by Email Is Not Prohibited by International Agreement**

As discussed above, Defendants Masud Karim and Md. Rabiul Islam are believed to reside in Bangladesh.  Bangladesh is not a member of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial matters ("Hague Convention"),

and therefore the Hague Convention does not apply to these Defendants.  *See* Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.  Moreover, *none* of the Defendants—including Defendants Masud Karim and Md. Rabiul Islam—have provided their real addresses, and instead have gone to great lengths to conceal their location, as described above.  Thus, regardless of Defendants' country of residence, the Hague Convention does not apply in cases such as this, where the address of the person to be served is not known to the party serving process.  Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see also Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff]."); *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *2 (email service authorized and the Hague Convention did not apply because, despite physical addresses having been provided to defendants' domain registrars, the actual addresses could not be confirmed as valid).

In the absence of an international agreement, the Court must look to Rule 4(f)(3), which allows alternative methods for service of process, so long as the method is directed by the Court and comports with constitutional notions of due process.  *See Rio Props.*, 284 F.3d at 1016; *PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *11; *Prediction Co*, 2010 U.S. Dist. LEXIS 26536, at *3.

### 2. Service of Process by Email Is Reasonably Calculated to Provide Notice to Defendants

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted).  "Such flexibility necessarily includes the utilization of modern communication

technologies to effect service when warranted by the facts." *Broadfoot v. Diaz*, 245 B.R. 713,

720 (Bankr. N.D. Ga. 2000).  As a result, courts have fashioned a range of alternative methods of

service, including service by email.  *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at

*18-20 (ordering service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536,

at *1-5 (ordering service by sending summons and complaint to an email address previously used

by defendant to communicate with plaintiff and to counsel in New York who had been in contact

with defendant); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (ordering service by

email and fax); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (ordering

service by email and international registered and standard mail).

       Email service on a defendant engaged in an illegal online business is appropriate and

constitutionally acceptable in a case such as this where the plaintiff is unable to personally serve

the defendant at a physical address and has shown that email is the most effective means of

providing the defendant with notice of the action.  *See Philip Morris,* 2007 U.S. Dist. LEXIS

19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct

business extensively, if not exclusively, through their Internet websites and correspond regularly

with customers via email"); *McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL

2696599, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that

service via email was appropriate where the defendants conducted their business online and

relied on an email address to conduct their business); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-

cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013)

(same; noting that Plaintiff's test email was not returned as undeliverable); *Popular Enters., LLC

v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3)

clearly authorizes service by email where defendant's address was unknown and emails sent

using the addresses defendant provided to the domain name registrar did not bounce back).

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them." *Williams*, 231 F.R.D. at 487 (quoting *Broadfoot*, 245 B.R. at 721). Thus, email service has the greatest likelihood of reaching e-commerce merchants, particularly Defendants here who are adept at hiding their identity and location. *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

Accordingly, service on Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims. Email will not only be effective in this case, but will be the most reliable means of communicating with Defendants.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the relief requested herein.

Dated: November 21, 2016

Respectfully submitted,

Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel: (202) 480-2999
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*