UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/18
```

MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, ELSEVIER, INC., JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC.,

　　　　　　　　Plaintiffs,

-against-

FARUKH KHAN, JOONWON PARK, JEONG HYUN CHU, MASUD KARIM, MD. RABIUL ISLAM, and JOHN DOES 1-10 d/b/a/ www.testbanksolution.com, www.testbankpdfdownload.com, www.testbankonline.com, www.testbankcart.com, www.digitaltestbank.com, www.testbank007.com, www.solutionmanualcenter.com, www.testbank-official.com, and www.solutionmanualonline.com,

　　　　　　　　Defendants.

**ORDER**

16 Civ. 9030 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

　　　　Plaintiffs McGraw-Hill Global Education Holdings, LLC, Elsevier, Inc., John Wiley & Sons, Inc., Cengage Learning, Inc., and Pearson Education Inc. publish educational works. In this action, Plaintiffs allege that Defendants Farukh Khan, Joonwon Park, Jeong Hyun Chu, Masud Karim, Rabiul Islam, and John Does 1-10 have infringed on Plaintiffs' copyrights in their educational works, in violation of 17 U.S.C. §§ 106(1), 106(3), and 501. (Cmplt. (Dkt. No. 1) ¶¶ 1-2, 40-46)

　　　　Plaintiffs allege that Defendants own, control, and operate multiple illegal online websites and forums to create, store, and sell unauthorized digital copies of Plaintiffs' works.

(Id. ¶¶ 23-28) Defendants operate these infringing websites under multiple names or aliases and through the use of multiple email addresses. (Id. ¶¶ 24-25) At Defendants' websites, purchasers or potential purchasers can search for listings of unauthorized digital copies of Plaintiffs' instructor solutions manuals and test banks. (Id. ¶ 28) Defendants also host "product pages" where visitors can download free sample copies of the instructor solutions manuals and test banks. (Id. ¶¶ 29-30) Defendants have also registered multiple domain names and established corresponding websites, some with identical or duplicative content, all to avoid interruption of their illegal business should any one website or payment account be shut down. (Id. ¶ 39)

Plaintiffs have made test purchases and downloaded free samples from Defendants' websites, confirming that Defendants are providing customers with digital copies of Plaintiffs' instructor solutions manuals and test banks. (Id. ¶ 33) Plaintiffs allege that Defendants' reproduction and distribution of Plaintiffs' copyrighted works has occurred without authorization and without compensation to Plaintiffs, their authors, and others in the legitimate chain of commerce. (Id. ¶ 35)

## PROCEDURAL HISTORY

This action was commenced on November 21, 2016. (See id.) That same day, this Court issued an order to show cause why a preliminary injunction should not be entered. (Order (Dkt. No. 3)) This Court also granted Plaintiffs' motion for an order authorizing alternative service, and directed Plaintiffs to make service on Defendants pursuant to Fed. R. Civ. P. 4(f)(3), by delivering electronic copies of the order, summons, and Complaint to Defendants' email addresses. (Id. at 7-8) On November 23, 2016, Plaintiffs certified that they had served copies of "(1) Plaintiffs' Complaint with Exhibit A, (2) the Summonses, (3) the Order, and (4) Plaintiffs' moving papers along with all supporting declarations and exhibits on Defendants on

November 23, 2016 via electronic mail at Defendants' Email Addresses as specified in [this Court's] Order." (Certificate of Service (Dkt. No. 11) at 1)

On December 5, 2016, this Court held a hearing on Plaintiffs' request for a preliminary injunction, and the Court subsequently entered an order granting Plaintiffs' motion for a preliminary injunction. (Order (Dkt. No. 15)) The preliminary injunction (1) enjoined Defendants from infringing Plaintiffs' works; (2) enjoined Defendants from transferring ownership or control of the websites or domain names associated with Defendants' websites; and (3) directed Defendants to locate all accounts connected to Defendants websites and refrain from transferring or withdrawing any funds from therein. (Order (Dkt. No. 3) at 4-7)

On February 27, 2017, Plaintiffs moved for entry of default against Defendants, given their failure to appear or otherwise respond to the Complaint. (Request for Default (Dkt. No. 19)) On February 28, 2017, the Clerk of Court issued a certificate of default. (Clerk's Certificate of Default (Dkt. No. 21))

On June 8, 2018, this Court issued an Order to Show Cause why a default judgment and permanent injunction should not be entered against Defendants. (Order to Show Cause (Dkt. No. 22)) This Court ordered that service by email be made by June 11, 2018, and scheduled a hearing for June 22, 2018 at 10:00 a.m. (Id. at 2) On June 8, 2018, Plaintiffs filed an Affidavit of Service, attesting that copies of this Court's Order to Show cause and the accompanying memorandum of law and declaration had been served on Defendants via electronic mail in accordance with this Court's November 21, 2016 Order authorizing alternative service. (Aff. of Service (Dkt. No. 25))

Defendants have not filed an opposition and did not appear at the June 22, 2018 hearing.

3

## DISCUSSION

### I. PERSONAL JURISDICTION

"A plaintiff's factual allegations, except those relating to damages, must be accepted as true where, as here, the defendant defaults." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). "'[B]efore a court grants a motion for default judgment, [however,] it must first assure itself that it has personal jurisdiction over the defendant.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011) (citation omitted) (alteration in original); see also Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 214 (2d Cir. 2010) ("It was . . . correct for the District Court . . . to inquire into its personal jurisdiction over [defendant] . . . In so doing the Court was . . . 'exercis[ing] its responsibility to determine that it ha[d] the power to enter [a] default judgment.'" (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986))). Where, as here, a plaintiff is proceeding under a federal statute that does not contain its own jurisdictional provision, "federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010) (citations omitted).

#### A. New York's Long-Arm Statute

##### 1. New York CPLR § 302(a)(1)

New York's long-arm statute provides, in relevant part, that a court may exercise specific personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. CPLR § 302(a)(1). To establish personal jurisdiction under this provision, a plaintiff must show that "(1) defendant purposefully availed himself of the privilege of doing business in the forum state such that the

4

defendant could foresee being brought into court there; and (2) plaintiff's claim arises out of or is related to the defendant's contacts with the forum state." Aqua Products, Inc. v. Smartpool, Inc., No. 04 Civ. 5492 (GBD), 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005).

"When analyzing whether a defendant's internet activity rises to the level of purposeful activity sufficient to satisfy Section 302(a)(1), courts apply a 'sliding scale' test based on the level of a website's interactivity." Audiovox Corp. v. S. China Enter., Inc., No. 11 Civ. 5142 (JS) (GRB), 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251 (2d Cir. 2007) ("'[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))))). "A website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." Id. at *3 (collecting cases). "However, if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." Audiovox, 2012 WL 3061518, at *3 (collecting cases); Hsin Ten Enter. USA, Inc. v. Clark Enterprises, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Plaintiffs allege and have proffered evidence that Defendants own and operate "highly interactive" online websites and forums, through which Defendants distribute digital copies of Plaintiffs' works to customers for a fee. (Cmplt. (Dkt. No. 1) ¶¶ 23-26, 28; Lichtman Decl. (Dkt. No. 5) ¶¶ 5, 8-10, 12-17) Defendants' websites have received thousands of visits from customers located throughout the United States, including in this District. (Cmplt.

5

(Dkt. No. 1) ¶ 34; Lichtman Decl. (Dkt. No. 5) ¶ 10) Moreover, Defendants' websites are "highly interactive," allowing prospective customers in New York to browse and purchase unauthorized digital copies of Plaintiffs' works. (Cmplt. (Dkt. No. 1) ¶¶ 26-34; Lichtman Decl. (Dkt. No. 5) ¶¶ 10-16) Because Defendants' "website is interactive and allows a buyer in New York to submit an order online," Audiovox, 2012 WL 3061518, at *3, Plaintiffs have established this Court's personal jurisdiction over Defendants pursuant to N.Y. CPLR § 302(a)(1).

### 2. New York CPLR § 302(a)(3)(ii)

N.Y. CPLR. § 302(a)(3)(ii) provides that "any non-domiciliary who in person or through an agent 'commits a tortious act without the state causing injury to person or property within the state may be subject to personal jurisdiction if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .'" V Cars, LLC v. Israel Corp., 902 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 790-91 (2d Cir. 1999)). In a copyright infringement action, the situs of the injury – for purposes of long-arm jurisdiction under N.Y. CPLR § 302(a)(3)(ii) – is the residence or "location of the copyright holder." Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 301-02, 304 (2011) ("[A] New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access.").

Here, the situs of Plaintiffs' injury is New York, where the majority of Plaintiffs have their principal place of business, or are incorporated. (See id.; Cmplt. (Dkt. No. 1) ¶¶ 6-10) "It is [also] reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York." McGraw-Hill

6

Companies, Inc. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005). Moreover, Plaintiffs have demonstrated that Defendants derive substantial revenue from sales throughout the United States. (See Cmplt. (Dkt. No. 1) ¶ 34 (citing report indicating that there were almost 40,000 visits to one of Defendants' websites, 67% of which came from visitors located in the United States)). Accordingly, this Court concludes that it also has personal jurisdiction over Defendants pursuant to New York CPLR § 302(a)(3).

**B.     Due Process**

The Court concludes that application of New York's long arm statute is consistent with the limits of due process. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); Ingraham v. Carroll, 90 N.Y.2d 592, 596 (1997) ("[E]stablishment of long-arm jurisdiction in connection with a New York injury under either [N.Y. CPLR § 302(a)(3)(i) or (ii)] does not implicate constitutional due process concerns[, because] '[t]he subdivision [302(a)(3)] was not designed to go to the full limits of permissible jurisdiction' . . . [and is therefore] more stringent than any constitutional requirement.").

**II.    PLAINTIFFS' APPLICATION FOR A DEFAULT JUDGMENT**

In moving for a default judgment, Plaintiffs seek the following relief: (1) statutory damages in the amount of $9,150,000, plus post-judgment interest; and (2) a permanent injunction. (Proposed Default Judgment (Dkt. No. 24-10) at 3-4)

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13 Civ. 2548 (KMW) (JLC), 2014 WL 1303434, at *3 (S.D.N.Y. Apr. 1, 2014). "However,

a district court need not concur that the alleged facts in the complaint constitute a valid cause of action and must evaluate whether the allegations in the complaint are sufficient to establish liability." Id. Accordingly, this Court will now consider whether the Complaint's well pleaded allegations are sufficient to establish Defendants' liability.

### A.  Copyright Infringement

Plaintiffs contend that Defendants infringed Plaintiffs' copyrights in the test banks, instructor solutions, and textbooks listed in Exhibit A to the Complaint. (See Cmplt. (Dkt. No. 1) ¶¶ 41-46, Ex. A (Dkt. No. 1-1)) Plaintiffs allege that they own the copyrights for these works, and are the exclusive licensees of all rights, title and interest in their respective copyrights. (Cmplt. (Dkt. No. 1) ¶ 41) Plaintiffs further allege that to the extent some of the instructor solutions manuals listed in Exhibit A have not been independently registered with the Copyright Office, they are "derivative works of the underlying textbook" and Plaintiffs therefore "rely upon their copyright registration for the underlying textbook." (Id.)

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

#### 1.  Ownership of a Valid Copyright

"With regard to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." Mint, 2011 WL 1792570, at *2 (citing Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999)); see Broad. Music, Inc. v. The Living Room Steak House, Inc., No. 14 Civ. 6298 (FBR) (ER), 2016 WL 756567, at *3 (E.D.N.Y. Feb. 26, 2016), report and recommendation adopted,

8

sub nom. Broad. Music, Inc. v. Living Room Steak House, Inc., 2016 WL 1056609 (E.D.N.Y. Mar. 17, 2016) (prima facie claim for copyright infringement established where the names and copyright registration numbers of the works were set forth in a schedule attached to the complaint); Feel Better Kids, Inc. v. Kids in Need, Inc., No. 06 Civ. 0023 (DRH) (AKT), 2012 WL 4483000, at *2 (E.D.N.Y. Aug. 28, 2012) , report and recommendation adopted, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) (granting default judgment to plaintiff where registration numbers for trademarks were set forth in complaint).

While Plaintiffs have not attached Certificates of Registration for the sixty-one works at issue, Plaintiffs have alleged that they own copyrights for the textbooks, test banks, and instructor solutions manuals at issue, and they have submitted a schedule listing the copyright registration numbers for each work in Exhibit A to the Complaint. (See Cmplt. (Dkt. No. 1) ¶ 41, Ex. A (Dkt. No. 1-1)) Plaintiffs have also submitted five publisher declarations alleging ownership of the works.[1] Where Plaintiffs have not obtained separate copyright registrations for the instructor solutions manuals listed in Exhibit A, Plaintiffs rely upon their copyright registrations for the underlying textbooks, asserting that the unregistered instructor solutions manuals are derivative works of the registered textbooks. (Cmplt. (Dkt. No. 1) ¶ 51)

A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . [including a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. "[T]o the extent unregistered versions incorporate protectable elements of [a

---

[1] (Morris Decl. (Dkt. No. 6) ¶ 10); (Murphy Decl. (Dkt. No. 7) ¶ 10); (Rosenthal Decl. (Dkt. No. 8) ¶ 10); (Tardif Decl. (Dkt. No. 10) ¶ 10); (Stitt (Dkt. No. 9) Decl. ¶ 10)

9

registered version] and were copied in an unauthorized manner, the infringement of the underlying work, through the unauthorized copying of the derivative works, serves as the basis for federal court jurisdiction and action based on the registration of the underlying work." SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 642 F. Supp. 2d 206, 214 (S.D.N.Y. 2009) (internal citations omitted).

A majority of courts in this District have held that copyright registration of a textbook protects a corresponding unregistered instructor solutions manual to the extent the solutions manual contains protected material from the registered textbook. See Pearson Educ., Inc. v. Ishayev, 963 F. Supp. 2d 239, 248 (S.D.N.Y. 2013) ("an unregistered derivative work is protected from infringement only to the extent to which that unregistered work has reproduced protected material from the underlying registered work."); Pearson Educ., Inc. v. Frances, No. 11 Civ. 6081(LTS)(JCF), 2013 WL 1360340, at *2 (S.D.N.Y. Apr. 3, 2013) (holding that plaintiffs' claims of copyright infringement for the copying of unregistered derivative works – instructors' solutions manuals – were only "viable to the extent that the [manuals] reproduced protected material from the registered textbooks").

Here, Plaintiffs allege that the instructor solutions manuals that are not independently registered are "derivative works of the underlying textbook." (Cmplt. (Dkt. No. 1) ¶ 41) Plaintiffs allege that the instructor solutions manuals "contain significant protected expression from the textbook." (Id. ¶ 20) "In some instances, these supplementary materials repeat the original questions or other original content verbatim from the textbook. But, even without word-for-word copying, the supplementary materials are based upon, and necessarily

copy from, the original questions and other protected expression from the textbook." (Id.)² The Court concludes that the instructor solutions manuals are derivative works, and are protected by Plaintiffs' copyrights for the underlying textbook.

The Court further concludes that the allegations in the Complaint are sufficient to establish that all of the works listed in Exhibit A to the Complaint are protected by Plaintiffs' copyrights.

### 2. Unauthorized copying

"Plaintiffs in copyright infringement actions are permitted to prove the second element of their claim – unauthorized copying by the defendant – indirectly by demonstrating access and substantial similarity. . . . Access may be inferred when the defendant has had a 'reasonable opportunity to view' plaintiff's work before creating his own." Arica Inst., Inc. v. Palmer, 761 F. Supp. 1056, 1064 (S.D.N.Y. 1991) (citing Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir. 1988)). "There is substantial similarity when 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'" Palmer, 761 F. Supp. at 1064 (citing Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)). "In cases where the trier of fact finds the parties' works not merely substantially similar but strikingly similar, copying may be

---

² Plaintiffs further allege that "the supplementary materials necessarily copy various creative decisions of the textbook author, including but not limited to: (a) what knowledge or skills to test versus not test, and to what degree to test; (b) what examples, fact patterns, and hypotheticals to use to test and reinforce the material that the author chose to include in the book; and (c) the relationship and progression among the questions in the book and the material the author chose to include in the book versus omit. Notably, instructor solutions manuals and test banks are specific to a given textbook. Even where a single publisher has multiple textbooks within a single subject, it produces separate solutions manuals and test banks unique to each title. It is tailored to the pedagogical approach, including the questions, of that particular book. If the supplementary materials did not need to so closely track the protected expression in the underlying textbook, they could be interchangeable across textbooks, which they are not." (Id.)

11

proved without proof of access." Palmer, 761 F. Supp. at 1064 (citing Gaste, 863 F.2d at 1067; Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946)).

Here, Plaintiffs have alleged that Defendants own, control, and operate multiple illegal online sites and other forums. (Cmplt. (Dkt. No. 1) ¶ 23) Defendants create and store unauthorized digital copies of solutions manuals and test banks, including the works listed in Exhibit A. (Id. ¶ 26) Plaintiffs made test purchases and downloaded multiple samples from Defendants' websites. (Id. ¶ 33) These purchases and downloads confirm that, as Defendants advertise on their websites, they provide customers with complete digital copies of Plaintiffs' instructor solutions manuals and test banks. (Id.) Upon payment of a fee from their customers, Defendants distribute copies to the public in violation of Plaintiffs' copyrights. (Id. ¶ 26) Defendants also offer free sample copies of the test banks and instructor solutions manuals. (Id. ¶ 30) As Defendants state in the "FAQ" section of their websites, Defendants provide a "free sample chapter for each test bank" and "[i]n most cases, the sample will contain the first or second chapter from the test bank." (Id.) "Many of the files Defendants distribute on their infringing websites contain the publishers' copyright notice on each and every page of the sample, warning that the material '[m]ay not be copied, scanned, or duplicated, in whole or in part.'" (Id.) Plaintiffs allege that, collectively, the infringing websites' inventories total "tens of thousands of unauthorized digital copies of Plaintiffs' and other publishers' works." (Id. ¶ 32)

The Court concludes that Plaintiffs have demonstrated unauthorized copying, and have demonstrated Defendants' liability for copyright infringement.

## B. Statutory Damages

Plaintiffs also seek statutory damages in the amount of $9,150,000 – consisting of the maximum amount of $150,000 in statutory damages under Section 504(c) of the U.S. Copyright Act[3] – plus post-judgment interest, calculated at the rate set forth in 28 U.S.C. § 1961. (See Proposed Default Judgment (Dkt. No. 24-10) at 3; Pltf. Br. (Dkt. No. 23) at 29) Plaintiffs' request for damages will be referred to Magistrate Judge Debra C. Freeman for purposes of conducting an inquest.

## III. PERMANENT INJUNCTION

Plaintiffs ask this Court to enter a permanent injunction against Defendants under the Copyright Act (1) enjoining Defendants from infringing any copyrighted work that is owned or controlled by Plaintiffs; (2) ordering Defendants to destroy all unauthorized copies of Plaintiffs' works that Defendants have in their possession, custody, or control; and (3) ordering Defendants to transfer the domain names they used in conjunction with Defendants' infringing

---

[3] Under the Copyright Act, a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). However, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2).

In assessing the appropriate amount of damages,

> courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (quoting Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986)).

13

websites to Plaintiffs' ownership and control within seven days. (Proposed Default Judgment (Dkt. No. 24-10) at 3-4)

A court may issue an injunction only where first,

> the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a[n] . . . injunction.

Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010). A plaintiff "seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief." Beastie Boys v. Monster Energy Co., 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015).

### A. Injunctive Relief under the Copyright Act

As previously stated, Plaintiffs are entitled to a default judgment on their copyright infringement claims under the Copyright Act. The Copyright Act provides for injunctive relief. See 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").

### B. Prerequisites for Issuance of an Injunction

The Court concludes that Plaintiffs have satisfied all of the prerequisites for the issuance of a permanent injunction.

First, Plaintiffs' success on the merits of their copyright infringement claims has been established.

Second, it appears that Plaintiff will suffer irreparable harm if an injunction is not issued. Accepting Plaintiff's factual allegations as true, they are sufficient to establish irreparable harm, because Plaintiffs have demonstrated that lost profits alone would not compensate them for the unauthorized use of their copyrights. In the absence of a permanent injunction, Defendants may continue to distribute unauthorized copies of Plaintiffs' instructor solutions manuals and test banks, thus preventing Plaintiffs from controlling the distribution of their products and recovering associated profits.

Third, the balance of hardships favors Plaintiffs. "[I]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015).

Finally, the public interest would not be disserved by the issuance of an injunction. While the public has an interest in free expression, that interest is severely attenuated where the material being unlawfully distributed is readily available from Plaintiffs.

Accordingly, Plaintiffs are entitled to a permanent injunction regarding Defendants' use of Plaintiffs' copyrighted works.

C.  **Scope of Injunction**

In addition to enjoining Defendants from further infringement, Plaintiffs also request that the injunction include (1) an order requiring destruction of all unauthorized copies of Plaintiffs' works that Defendants have in their possession, and (2) an order directing Defendants, as well as the applicable registrars and registries overseeing the domain names that Defendants have used to infringe Plaintiffs' copyrighted works, to transfer to Plaintiffs the domain names associated with Defendants' infringing websites. (See Proposed Default Judgment Order (Dkt. No. 24-10) at 3-4)

As an initial matter, the Copyright Act authorizes courts to order the destruction of infringing products. See 17 U.S.C. § 503(b).[4] Therefore, Plaintiffs request for an injunction directing destruction of unauthorized copies of Plaintiffs' works will be granted.

With respect to Plaintiffs' request for an order transferring Defendants' domain names to Plaintiffs, a number of courts have found that a transfer of domain names is an appropriate remedy to prevent further infringement of a copyright holder's rights. See Paramount Pictures Corp. v. Does, No. 15 Civ. 5819, 2015 WL 10013786, at *4 (S.D.N.Y. Nov. 24, 2015) (ordering – pursuant to 17 U.S.C. § 502(a) and the court's inherent equitable powers – defendants, their officers, servants, employees, agents, and any persons who are in active concert or participation with them, "including but not limited to domain name registries . . . and/or the individual registrars holding or listing one of more of the domain names" to transfer defendants' domain names "to [p]laintiffs' ownership and control"); Lichtman Decl., Ex. 3 (Dkt. No 24-3) (Elsevier, Inc. v. Han, No. 16 Civ. 1245 (RA), slip op. (S.D.N.Y. July 21, 2016) (entering default judgment and permanent injunction in copyright action, and directing defendants and domain name registries to transfer domain names to plaintiffs)); Lichtman Decl., Ex. 4 (Dkt. No. 24-4) (McGraw-Hill Global Educ., LLC v. Shvabauer, No. 15 Civ. 2746 (VEC) (same)).

Acknowledging that some courts have declined to issue an injunction transferring a defendant's domain names to plaintiff absent proof that defendant continues to sell infringing products on its websites, see, e.g., Gucci Am., Inc., 678 F. Supp. 2d at 120 (granting permanent

---

[4] "As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced." 17 U.S.C. § 503(b).

injunction, but declining to issue an injunction transferring domain names absent proof of continued infringing sales); Cengage Learning, Inc. v. Shi, No. 13 Civ. 7772 (VSB), 2017 WL 1063463, at *6 (S.D.N.Y. Mar. 21, 2017); BWP Media USA Inc. v. NV Media Grp., Inc., No. 13 Civ. 8866 (DAB), 2015 WL 2152679, at *3 (S.D.N.Y. May 6, 2015), this Court concludes that such relief is appropriate under the circumstances of the instant case.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for a default judgment and permanent injunction is granted. This matter is referred to the assigned magistrate judge for purposes of conducting an inquest as to damages. An order of default and permanent injunction will follow.

Dated: New York, New York
June 22, 2018

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge